IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**RAYMOND LOYCANO**  CASE NO.:

    **Plaintiff,**

vs.

**WELLS FARGO BANK, N.A.**

A Foreign Corporation.

_____/

**COMPLAINT FOR DAMAGES**

Plaintiff Raymond Loycano, by and through undersigned counsel, sues Defendant Wells Fargo Bank, N.A. and alleges:

**I.  THE PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Raymond Loycano is a natural person, over the age of 21. He is a citizen of the State of Florida and currently resides in Broward County, Florida. At the time of the events giving rise to this claim he resided in Palm Beach County, Florida.

2. Defendant Wells Fargo Bank, N.A. is engaged in banking and mortgage servicing activities throughout the United States, including the territorial jurisdiction of this Court.

3. Plaintiff asserts claims against Wells Fargo arising under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 and related claims arising under Florida law that are based upon the same transactions and occurrences that give rise to the RESPA claim. Accordingly, this Court has federal question jurisdiction to adjudicate the RESPA claim under 28 USC § 1331.  Plaintiff also bring common law claims for trespass and negligent destruction of

property.  These claims arise from the same common nucleus of operative fact as the RESPA claim.  Accordingly, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate these claims. In addition, these claims involve an amount in controversy in excess of $75,000, including punitive damages, but excluding interest, attorneys' fees, and costs.  Because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the minimum threshold for diversity jurisdiction, this Court also has diversity jurisdiction over the state law claims pursuant to 28 U.S.C. §1332.

## II.  GENERAL ALLEGATIONS COMMON TO ALL COUNTS

4. Plaintiff previously owned a home located in Boca Raton, Florida that was subject to a mortgage. At all material times, this property was Plaintiff's primary residence.  Also, at all material times, Wells Fargo was the servicer for Plaintiff's mortgage loan.  However, the subject mortgage loan belongs the Federal National Mortgage Association, also known as "Fannie Mae" or "FNMA."   This entity will be referred to hereafter as "Fannie Mae."

5. Plaintiff's mortgage loan is a "federally related mortgage loan" as that term is defined by 12 U.S.C. § 2602 (1).

6. Wells Fargo is a mortgage servicer that services federally related mortgage loans. It is one of the larger mortgage servicers in the nation, and therefore cannot avail itself of some of the regulatory exemptions and limitations that apply to small servicers.  Wells Fargo is therefore obligated to comply with all requirements established by the RESPA, and its implementing regulation ("Regulation X"), including but limited to the provisions of Regulation X found in 12 C.F.R. § 1024.41 relating to loss mitigation.

7.  Wells Fargo previously brought a foreclosure lawsuit against Plaintiff in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida.

8. Plaintiff retained counsel and defended the foreclosure lawsuit.

9. While the foreclosure was pending, Plaintiff submitted a loss mitigation application to Wells Fargo in an effort to resolve the asserted default and avoid foreclosure.

9. On or about October 17th, 2014 Plaintiff submitted documents that Wells Fargo had requested making his application a "complete loss mitigation application" as defined by 12 C.F.R. § 1024.41(c).

10. At the time that Plaintiff's loss application became "complete" no foreclosure sale relating to the property had been scheduled.

11. Wells Fargo continued to prosecute the foreclosure action while the complete loss mitigation application was pending.  Wells Fargo ultimately declined to offer Plaintiff a loss mitigation alternative.

12. On more than one occasion while the foreclosure litigation was pending and while Plaintiff was in lawful possession of the property, agents of Wells Fargo acting at Wells Fargo's direction, unlawfully broke into Plaintiff's home, removed his personal property from the home, and changed the locks thereby depriving Plaintiff of access to the property.

### III.  COUNT I – VIOLATION OF RESPA/REGULATION X LOSS MITIGATON REQUIREMENTS PROTECTING BORROWER'S FROM FORECLOSURE JUDGEMENTS WHILE A COMPLETE LOSS MITIGATION APPLICATION IS PENDING

13. Plaintiff re-alleges and incorporates by reference the allegations found in Paragraphs 1 through 12 above.

14. RESPA provides that it is unlawful for a mortgage servicer to, inter alia, "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by

regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. §2605(k)(E).

15. The Bureau of Consumer Financial Protection also known as the Consumer Financial Protection Bureau or "CFPB" has promulgated regulations relating to "loss mitigation" found at 12 C.F.R. §1024.41. Pursuant to the authority that RESPA grants, the CFPB has promulgated §1024.41(a), which expressly authorizes a borrower to bring a private cause of action whenever that borrower has been damaged by a servicer's violation of any part of §1024.41.

16. Relevant here, §1024.41(g) provides that, where a borrower submits a complete loss mitigation application at least 37 days before a foreclosure sale, "the servicer shall not move for a foreclosure judgment or sale" until the borrower's loss mitigation application has been decided and any related appeals resolved.

17. The CFPB's official commentary to §1024.41(g) provides[1]:

**1. DISPOSITIVE MOTION.**

The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

---

[1] The official interpretation is available at the CFPB's website. https://www.consumerfinance.gov/eregulations/1024-41/2015-18239#1024-41-h (Last visited October 6th, 2017).

(*Id.*)

### 3. INTERACTION WITH FORECLOSURE COUNSEL

A servicer is responsible for promptly instructing foreclosure counsel retained by the servicer not to proceed with filing for foreclosure judgment or order of sale, or to conduct a foreclosure sale, in violation of § 1024.41(g) when a servicer has received a complete loss mitigation application, which may include instructing counsel to move for a continuance with respect to the deadline for filing a dispositive motion.

(*Id.*)

18. Thus, under §1024.41(g) mortgage servicers have an affirmative obligation under §1024.41(g) to ensure that the attorneys representing them in foreclosure litigation take affirmative measures to avoid the entry of a final foreclosure judgment while a timely loss mitigation application is either pending, or under review due to the filing of a timely appeal.

19. On October 27th, 2014, Wells Fargo generated letters advising Plaintiff that his loss mitigation application been denied. Notably, these letters provided little information about the reason for this decision and did not provide information that §1024.41, and related CFPB commentary, requires.  Furthermore, Wells Fargo continued to refuse provide this information even after Plaintiff's counsel representing him in the foreclosure litigation affirmatively requested the missing information explaining the basis for the denial of the loss mitigation application.  Accordingly, it is not confident that Wells Fargo ever conducted a bona fide evaluation of his loss mitigation application. Plaintiff reserves the right to assert appropriate additional claims if discovery reveals that Wells Fargo failed to evaluate his application in the manner that RESPA and Regulation X require.

20. Plaintiff timely appealed Wells Fargo's denial of his loss mitigation application.

21. Before Plaintiff's application became "complete" a foreclosure trial had been scheduled to take place on October 30th, 2014.

22. Although Wells Fargo failed to take any affirmative measures to avoid the foreclosure trial, Plaintiff, through counsel, did ask the state court to continue that trial on the grounds that the federal policy embodied in §1024.41 required the completion of the loss mitigation process before the entry of a foreclosure judgment.

23. Far from taking affirmative measures to avoid the trial, counsel for Wells Fargo actively opposed the requested continuance, thereby placing Wells Fargo in violation of its obligations under §1024.41(g), as interpreted by the CFPB's commentary cited in Paragraph 17 above.

24. Over Wells Fargo's objection, the state court granted Plaintiff's request and continued the trial.

25. Wells Fargo's violation of §1024.41(g) increased Plaintiff's expenses incurred in connection with the foreclosure litigation, including but limited to causing him to incur the expense associated with a court reporter to record the October 30th, 2017 proceedings and produce a transcript. Plaintiff's counsel was aware, in advance of the hearing, that counsel for Wells Fargo would oppose the continuance. If Wells Fargo had filed an appropriate motion, or joined Plaintiff's motion seeking the continuance, the related costs for the court reporter, or the transcript, of the October 30th proceedings, could have been avoided.

26. There were two law firms representing Wells Fargo in the foreclosure litigation. Both of these law firms handled a very large number of foreclosure matters for Wells Fargo during the year 2014. It is therefore reasonable to infer that each of these law firms were involved in more than five foreclosure cases where borrowers had submitted complete loss

mitigation applications between the January 10th, 2014 effective date of the loss mitigation related requirements of RESPA, and October 30th, 2014 - the date of the RESPA violation in the case at bar.  However, counsel representing Wells Fargo in the foreclosure litigation demonstrated by their affirmative opposition to Plaintiff's efforts to obtain a continuance, that they were unfamiliar with foreclosure counsel's obligations.  Accordingly, it must be inferred that Wells Fargo failed to appropriately inform counsel of these requirements as mandated by §1024.41(g) and the related commentary.  Thus, Wells Fargo's violation of §1024.41(g) in this case constitutes a pattern and practice of non-compliance with Wells Fargo's obligations.  Plaintiff is therefore entitled to an award of statutory damages in the amount of $2000.

27. In addition to actual pecuniary damages and statutory damages, Plaintiff is also entitled to an award of emotional distress damages in connection with the RESPA violation.

28. Pursuant to the attorney fee and cost shifting provisions found in 12 U.S.C. §2605(f), Plaintiff also seeks an award of prevailing party attorneys' fees.

WHEREFORE, Plaintiff demands trial by jury and respectfully requests that this Honorable Court enter final judgment in the total amount of his damages as determined at trial, including statutory damages, together with an award of prevailing party attorneys' fees and litigation costs.

## IV.  COUNT II – TRESPASS TO REAL PROPERTY

29. Plaintiff re-alleges and incorporates by reference the allegations found in Paragraphs 1 through 12.

30. This is an action for damages, including punitive damages, in excess of $75,000, brought under the common law of the State of Florida.

31. As the mortgage servicer for a secured party, Wells Fargo had a non-delegable duty under section 679.606 Florida Statutes to ensure that no non-judicial effort to obtain possession of the collateral for the mortgage that it serviced involved a breach of the peace.

32. On or about March 3rd, 2015, persons acting on behalf of Wells Fargo and its direction broke into Plaintiff's property and changed the locks, thereby depriving him of access. At the time, Plaintiff was still in lawful possession of the property.

33. Counsel representing Wells Fargo were immediately notified of the intrusion, and agreed to take remedial measures.

34. But only three days later on March 6th, 2015, persons acting on behalf of Wells Fargo and its direction once again broke into Plaintiff's property and changed the locks, thereby depriving him of access a second time. At the time, Plaintiff was still in lawful possession of the property.

35. The repeated breaking and entering into Plaintiff's home, done at Wells Fargo's request and on its behalf, constitutes a breach of the peace.

36. The individuals acting on Wells Fargo's behalf repeatedly and forcibly intruded into Plaintiff's home, even after counsel presumably advised Wells Fargo that it was not entitled to possession of the property at the time. Wells Fargo and those acting on its behalf engaged in conduct that constitutes "gross negligence" as that term is defined by section 768.72(2)(b), or alternatively "intentional misconduct" as that term is defined by 768.72(2)(a).

37. Wells Fargo, and the individuals who acted on its behalf, repeatedly and forcibly intruded into Plaintiff's home. By doing so, Wells Fargo and the individuals who acted on its behalf engaged in conduct that constitutes either a reckless disregard of Plaintiff's right to

peacefully occupy the property, or an intentional violation of that right.  In either event, an award of punitive damages is appropriate.

WHEREFORE, Plaintiff demands trial by jury and respectfully requests that this Honorable Court enter final judgment in his favor in the total amount of his damages as determined at trial, including punitive damages, together with an award of taxable litigation costs.

### V -  COUNT III – TRESPASS TO PERSONAL PROPERTY

38. Plaintiff re-alleges and incorporates by reference the allegations found in Paragraphs 1 through 12.

39. This is an action for damages, including punitive damages, in excess of $75,000, brought under the common law of the State of Florida.

40. As the mortgage servicer for a secured party, Wells Fargo had a non-delegable duty under section 679.606 Florida Statutes, to ensure that no non-judicial effort to obtain possession of any collateral related to the mortgage that it serviced involved a breach of the peace.

41. The repeated breaking and entering into Plaintiff's home, done at Wells Fargo's request and on its behalf described in Paragraphs 30-32 above, constitutes a breach of the peace.

42. On or about March 3rd, 2015 and again on March 6th, 2015, individuals acting on behalf of Wells Fargo entered Plaintiff home and removed personal property that he had inside.

43. Prior to its wrongful removal, the property that was removed by individuals acting on Wells Fargo's behalf was in Plaintiff's possession.

44. The individuals who removed Plaintiff's property from his home intentionally interfered with Plaintiff's chattels, without justification.

9

45. Additional personal property was removed from Plaintiff's home on March 6th, 2015. By that point in time, Wells Fargo's counsel had presumably advised Wells Fargo that it did not have the right to enter Plaintiff's home or to remove his property.

46. The individuals operating on Wells Fargo's behalf and at its instruction, repeatedly and forcibly removed Plaintiff's property after breaking into his home.  This continued to happen even after counsel presumably advised Wells Fargo that it was not entitled to possession of the property at the time, or to remove personal property found therein.  The individuals who broke into Plaintiff's property's conduct is attributable to Wells Fargo, and constitutes "gross negligence" as that term is defined by section 768.72(2)(b), or alternatively "intentional misconduct" as that term is defined by 768.72(2)(a).

47. Wells Fargo, and the individuals acting on its behalf, behaved in a manner that constitutes either a reckless disregard of Plaintiff's right to peacefully occupy the property at that point in time, or an intentional violation of that right.   In either event, an award of punitive damages is appropriate.

WHEREFORE,  Plaintiff demands trial by jury and respectfully requests that this Honorable Court enter final judgment in his favor in the total amount of his damages as determined at trial, including punitive damages, together with an award of taxable litigation costs.

## VIII. DEMAND FOR TRIAL BY JURY

48. Plaintiffs herby demands trial by jury on all claims so triable.  Because Wells Fargo is not a party to the mortgage contracts, it may not assert the contractual jury trial waiver on its own behalf.

Respectfully Submitted,

**THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.**

1999 N. UNIVERSITY DRIVE
CORAL SPRINGS, FL 33071
Phone:  (954) 942-5270
Fax:     (954) 942-5272
E-mail:  jgolant@jeffreygolantlaw.com
By: **/S/ JEFFREY N. GOLANT, ESQ.**
Fla. Bar. No. 0707732
Counsel for Plaintiffs Raymond Loycano